*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

OVELL EVERS, SR.,

                *Defendant-Appellant.*

No. 08-5774

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-20048-001—Samuel H. Mays, Jr., District Judge.

Argued: July 28, 2011

Decided and Filed: February 10, 2012

Before: GRIFFIN and WHITE, Circuit Judges; WATSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

## OPINION
_____

    GRIFFIN, Circuit Judge. Defendant Ovell Evers, Sr., appeals his jury convictions and sentence on two counts of production of child pornography, in violation

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

1

of 18 U.S.C. § 2251(a); one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and one forfeiture count under 18 U.S.C. § 2253.  The convictions stem from Evers' sexual assault and exploitation of his thirteen-year-old niece.

Evers challenges (1) the district court's denial of his motions to suppress evidence; (2) the district court's award of restitution to the victim's legal guardian for lost income and child care expenses; (3) the forfeiture of one of two seized computers; (4) the substantive and procedural reasonableness of his within-Guidelines sentence of 235 months of imprisonment; and (5) certain special conditions of supervised release.

For the reasons set forth below, we vacate in part the judgment of the district court insofar as it ordered the forfeiture of a beige computer and the payment of $140 in restitution for child care expenses to the victim's legal guardian.  We decline to consider, as premature, Evers' challenge to the special conditions of his supervised release.  In all other respects, we affirm Evers' conviction and sentence, and remand the case to the district court for further proceedings consistent with this opinion.

I.

On January 14, 2007, defendant's son, Ovell Evers, Jr. ("Junior"), notified the Memphis, Tennessee, Police Department that his thirteen-year-old female cousin, M.E., reported to him that defendant Evers performed oral sex on her on two occasions in December 2006 and took photographs of her private parts while she posed in sexual positions wearing bikini underwear.  M.E. advised Junior, her legal guardian, that the photos were taken with a silver Kodak camera and stored on Evers' computer.  Evers told Junior about some still photos of M.E. and her siblings that Evers had downloaded on his computer, and when Junior opened the file with the pictures, he saw a movie of M.E. that was sexually suggestive in nature.  Evers babysat on a regular basis for M.E., her minor brother, and Junior's son, while Junior was at work.

On January 19, 2007, police officers obtained a search warrant, which authorized a search of Evers' Memphis residence for a digital camera, photos, personal computer,

and computer accessories. With the assistance of agents from the Federal Bureau of Investigation, the officers executed the warrant in the presence of Evers, who signed a consent-to-search form giving the officers permission to search the premises.

Evers told the officers that he owned two computers – a beige Ultra 52X Max and a black Ultra DO206 – which he purportedly used for his pest-control business, to pay bills, and to save family photos taken on his Kodak digital camera. Officers found the computers in Evers' bedroom, and a cursory on-site view of the contents of the black computer indicated that Evers had deleted images prior to the search. However, in the "my document" folder, there was a photograph of a minor female wearing a t-shirt and pink pajamas posing with her back to the camera. Evers identified the girl as M.E. and told the officers that he took the photograph in order to show the length of M.E.'s hair to other people. Evers claimed that the only other photograph he ever took of M.E. was with her family. Evers also told the officers that he used his Kodak digital camera to videotape M.E. sitting at the computer and dancing at Junior's house. Evers denied that he had images of M.E. dressed in bikini underwear on his computer or in his house, and he insisted that M.E. and Junior were making false allegations against him.

The officers asked Evers several times if he wanted to cooperate with the investigators; however, he responded that he had no additional information and requested a lawyer. The officers confiscated Evers' two computers, a silver Kodak digital camera and docking station, and several DVDs. A subsequent off-site search of the black computer by a computer forensics agent revealed eighty-two images of M.E., of which approximately forty were sexually explicit images of M.E. in her underwear.

In February 2007, following a federal grand-jury investigation, Evers was charged with two counts of production of child pornography, one count of possession of child pornography, and one forfeiture count, pursuant to 18 U.S.C. §§ 2251(a), 2252(a)(4)(B), and 2253, respectively.[1] Evers moved to suppress all evidence obtained during the search of his residence. Following a suppression hearing, the district court

---

[1]Evers was charged by the State of Tennessee with two counts of rape and one count of statutory rape. These charges were still pending at the time of his sentencing in the federal case.

found Evers' written consent to search to be invalid because, as conceded by the government, Evers' made a contemporaneous request for an attorney at the time he signed the consent.  However, the court denied Evers' motions to suppress in all other respects, holding that there was probable cause to issue the warrant, the warrant was sufficiently particular in its description of the items to be seized, and the search was reasonable and not unlawfully overbroad.  The case proceeded to trial, culminating in a jury verdict of guilty on all counts.

On June 9, 2008, the district court sentenced Evers to 235 months of imprisonment, at the bottom of the recommended Guidelines range of 235 to 293 months' incarceration.  In addition to the standard conditions of a ten-year period of supervised release, the court also set thirteen special conditions, assessed a $300 fine, required the forfeiture of the property listed in the indictment, and ordered restitution in the amount of $1,640 for Junior's lost wages and child care expenses incurred in his role as the legal guardian of M.E.  Evers now timely appeals.

II.

Evers first challenges the district court's denial of his motions to suppress the evidence.  "When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo, considering the evidence in the light most favorable to the government." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011).  "We review de novo a district court's determination of particularity." *Id*.  "'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

The Tennessee state court issued the search warrant on the basis of an affidavit submitted by Sergeant I. L. Beck, Sr., a veteran Memphis police officer.  In his affidavit, Beck recounted in detail the information provided by Junior about Evers' alleged sexual and pornographic acts with M.E. using his camera and computer, and requested "that a warrant issue to search the person and premises of the said 3014 Johnson Ave . . . where he . . . believes said Digital Camera, Photo's [*sic*], Personal Computer and accessories

. . . are now possessed, contrary to the Laws of the State of Tennessee." (Emphasis removed.) The resultant search warrant stated:

> Proof by affidavit having been made before me . . . [t]hat there is probable cause for believing that the Laws of the State of Tennessee have been and are being violated by Ovell Evers by having in his/her possession Digital Camera, Photo's [*sic*], Personal Computer and accessories. Contrary to the Laws of the State of Tennessee, upon the following described property, to-wit: 3014 Johnson Ave. . . . [s]ituated in Shelby County, Tennessee; you are therefore commanded to make immediate search of the person and premises herein described for the following property: Digital Camera, Photo's [*sic*], Personal Computer and accessories. And if you find the same, or any part thereof, to bring it forthwith before me, at my office, in Memphis, of said County and State.

(Emphasis removed.)

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The warrant process is primarily concerned with identifying *what* may be searched or seized – not how – and *whether* there is sufficient cause for the invasion of privacy thus entailed." *United States v. Upham*, 168 F.3d 532, 537 (1st Cir. 1999). Therefore, "items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment," the purpose being "to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Richards*, 659 F.3d at 536-37 (citations omitted). The particularity requirement encompasses two separate concerns – whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized. *Richards*, 659 F.3d at 537.

A search pursuant to a valid warrant may become an impermissible general search if, as alleged by Evers, the police "flagrant[ly] disregard . . . the limitations of [the] search warrant" and the search "unreasonably exceeded the scope of the warrant." *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (citation and internal quotation marks omitted). However, "'[t]he prohibition of general searches is not . . . a demand for precise ex ante knowledge of the location and content of evidence . . . . The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation.'" *Richards*, 659 F.3d at 541 (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004)). A search warrant "will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (citation and internal quotation marks omitted).

Evers argues that, although the search warrant authorized the seizure of his computers, camera, and other electronic media, it did not authorize a search of the black computer's hard drive, and the police therefore unlawfully exceeded the scope of the warrant when they searched the contents of the computer without obtaining a second warrant.[2]

The federal courts are in agreement that a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a "sufficient chance of finding some needles in the computer haystack." *Upham*, 168 F.3d at 535; *see also United States v. Grimmett*, 439 F.3d 1263, 1268-70 (10th Cir. 2006) (holding that a warrant for the search of "any and all" computer hardware and software for child pornography authorized both the seizure and subsequent search of the defendant's computer files); *Guest*, 255 F.3d at 335 ("Because of the technical difficulties of conducting a computer search in a suspect's home, the seizure of the computers,

---

[2]As discussed *infra*, Section IV, the government concedes that the beige computer contained no images of the victim and, in light of its insufficient nexus to the crimes, should not have been included in the forfeiture judgment.

including their content, was reasonable in [this] case[] to allow police to locate the offending files."); *Upham*, 168 F.3d at 535 ("As a practical matter, the seizure and subsequent off-premises search of the computer . . . was about the narrowest definable search and seizure reasonably likely to obtain the images [of the child pornography sought].").

Moreover, a second warrant to search a properly seized computer is not necessary "where the evidence obtained in the search did not exceed the probable cause articulated in the original warrant." *Richards*, 659 F.3d at 539 n.10 (citing *United States v. Gregoire*, 638 F.3d 962, 967-68 (8th Cir. 2011); *Grimmett*, 439 F.3d at 1268-69; *Upham*, 168 F.3d at 535; and *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998)). This is in keeping with the general principle that "even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (citations and internal quotation marks omitted); *see also United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) ("A search does not become invalid merely because some items not covered by a warrant are seized.").

Evers does not contest that the affidavit and warrant established probable cause to believe that there would be pornographic photographs of a minor at Evers' residence, and that these photographs would likely be contained in his "Digital Camera, Photo's [*sic*], Personal Computer and accessories." The warrant was, as the district court properly concluded, "specifically designed not simply to permit the officers to seize the computer and digital camera, but to view the computer and the digital camera, to have access to them." We agree with the district court that the search for, and extraction of, illegal images from the black computer's hard drive fell within the lawful parameters of the warrant.

Evers asserts alternatively that even if the warrant authorized the search, its failure to describe with particularity the computer files to be searched or to require the use of a search protocol resulted in an unconstitutional general search of his computer. Again, we disagree.

In *Richards*, we discussed in depth the Fourth Amendment's particularity requirement in the context of computer searches and noted that "[t]he problem with applying this [requirement] to computer searches lies in the fact that [] images could be nearly anywhere on the computers.  Unlike a physical object that can be immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents." *Richards*, 659 F.3d at 538 n.8 (quoting *United States v. Mann*, 592 F.3d 779, 782 (7th Cir. 2010)).  Consequently,

> given the unique problem encountered in computer searches, and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts have eschewed the use of a specific search protocol and, instead, have employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis: "While officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant, . . . a computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir.), *cert. denied*, — U.S. —, 130 S. Ct. 1028 (2009) (citations and internal quotation marks omitted).

*Richards*, 659 F.3d at 538 (footnotes omitted).

In the present case, the warrant was "as specific as the circumstances and the nature of the activity under investigation permit[ted]," *Guest*, 255 F.3d at 336 (citation and internal quotation marks omitted), and confined the search to evidence of child pornography on the computer, camera, and media described by the victim M.E. and Junior.  *See United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (upholding a warrant authorizing the search of the defendant's entire computer system where, although "[b]oth warrants described the computer equipment itself in generic terms and subjected it to blanket seizure . . . [t]he government knew Lacy had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks.").  Evers presents no evidence whatsoever that the officers engaged in prohibited "exploratory rummaging" or made inadvertent discoveries in their search of his computer, camera, and other electronic devices.  *Grimmett*, 439 F.3d at 1270.  The

district court therefore did not err in denying Evers' motions to suppress the evidence obtained as a result of the search of his residence.   *See Richards*, 659 F.3d at 541-42.

Alternatively, even assuming arguendo that the warrant was invalid for lack of particularity, the *Leon* good-faith exception, "which allows admission of evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective,'" applies in this case. *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)).   "*Leon* made clear that only in exceptional circumstances is law enforcement to disregard a magistrate judge's authorization – for instance, when a warrant is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable[,]' or when a warrant is 'so facially deficient that it could not reasonably be presumed valid.'"   *Richards*, 659 F.3d at 542 (quoting *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) (citations and internal quotation marks omitted)).

Although the search warrant at issue was by no means a model of clarity, it cross-referenced Sergeant Beck's affidavit, which in turn recited the underlying factual circumstances of the alleged sexual crimes, identified the victim, gave the address of Evers' residence, and listed a "Digital Camera, Photo's [*sic*], Personal Computer and accessories" – items linked by M.E. to the offenses – as objects subject to seizure. Contrary to Evers' argument, the affidavit was not so "bare bones," or the warrant "so facially deficient," that the executing officers could not reasonably have relied upon them. *United States v. Moore*, 661 F.3d 309, 314-15 (6th Cir. 2011).

### III.

Pursuant to 18 U.S.C. § 2259, the district court awarded $1,640 in restitution to Junior, in his capacity as the legal guardian of the victim M.E., for lost wages ($1,500) incurred as a result of his attendance at the court proceedings in this case, and child care expenses ($140).  Evers does not contest Junior's status as guardian or quarrel with the dollar amount of the restitution.  He does contend, however, that the restitution ordered in this case is not permitted under the statute for several reasons.  First, he maintains that to the extent Junior, as guardian, falls within the definition of a "victim" set forth in

18 U.S.C. § 2259(c), he is only entitled to collect restitution for the losses "incurred by the victim" herself, i.e., *M.E.'s* lost income. Second, even if these are cognizable losses, they were not proximately caused by the offenses in question and therefore are not recoverable under § 2259. Third, the district court's award of $140 in child care expenses is not justified because Evers provided free babysitting services to Junior, looking after not only M.E., but her brother and Junior's son as well. Upon Evers' arrest, Junior merely lost his free source of child care – a completely gratuitous service that Junior otherwise would have paid for; therefore, the child-care expenses incurred by Junior were far too attenuated to have been the result of Evers' criminal conduct.

We review de novo the question whether restitution is permitted under the law. *United States v. Jones*, 641 F.3d 706, 713 (6th Cir. 2011). If it is determined that restitution is permissible, then the amount of restitution is reviewed under the abuse-of-discretion standard. *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011). The government bears the burden of proving the amount of the victim's loss by a preponderance of the evidence. 18 U.S.C. §§ 2259(b)(2), 3664(e); *United States v. Kratt*, 579 F.3d 558, 565 (6th Cir. 2009); *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000).

The Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, was enacted for the purpose of compensating the victims of offenses involving the sexual exploitation of children. It makes restitution "mandatory" for such crimes and "direct[s] the defendant to pay the victim . . . the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2259(b)(1), (b)(4). The term "victim" is defined by the Act as

> the individual harmed as a result of a commission of a crime under this chapter, *including, in the case of a victim who is under 18 years of age*, incompetent, incapacitated, or deceased, *the legal guardian of the victim* or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 2259(c) (emphasis added).  The Act further defines "the full amount of the victim's losses" as

> any costs incurred by the victim for --
>
> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorney's fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F).  "An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A."  *Id.* at § 2259(b)(2).

The basis for the award of restitution to Junior is set forth in Paragraph 12 of the Presentence Report ("PSR"), which states:

> Ovell Evers, Jr., and the minor girl (M.E.), now 15-years-old, provided statements that are available for review upon request.  Mr. Evers, Jr., advised that in the past year, he lost $1,500 in salary for missing 8 days of work due to the instant offense.  Mr. Evers, Jr., advised that the defendant was the person he had babysitting his child and his cousin (victim M.E.).  Mr. Evers, Jr., advised that for the past year, since the arrest of the defendant, he has had to pay $140 in babysitting fees.

In the Confirmation of Loss referred to in the PSR, Junior provided documentation of his lost wages, attributable to his attendance at court-related proceedings.  At the sentencing hearing, over Evers' objection, the district court held that these expenses requested by Junior were proximately caused by Evers' criminal conduct and therefore recoverable under § 2259.

The propriety of the district court's restitution award to Junior raises issues of first impression in this circuit regarding the scope of § 2259.  "Because [f]ederal courts have no inherent power to award restitution, we may order restitution only when and to the extent authorized by statute."  *United States v. Kennedy*, 643 F.3d 1251, 1260 (9th Cir. 2011) (citation and internal quotation marks omitted).  "'[W]hen the statutory language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'"  *United States v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)).  "[The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent."  *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson*, 519 U.S. at 341.

Under the plain language of the statute, Junior, as the legal guardian of M.E., falls within the definition of a "victim" under § 2259(c).  Likewise, the costs sought by Junior – "lost income" and "child care expenses" – are expressly included in the category of recoverable losses listed in § 2259(b)(3).  *See id.* at § (b)(3)(C) and (D).  However, Junior's right to recover these costs is muddied in these circumstances involving a third party's restitution claim by the qualifying phrase "incurred by the victim" in § 2259(b)(3).  Evers argues that the effect of this phrase is to limit a legal guardian's recovery to only those costs incurred directly by the minor victim herself.  We conclude that Evers' narrow reading of § 2259(c) defies a common sense reading of the statute and thwarts its purpose.

"[S]ection 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."  *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999).  "In enacting section 2259, it is clear that Congress intended to provide victims of sexual abuse with expansive relief for 'the *full* amount of . . . [their] losses[.]'"  *United States v. Danser*, 270 F.3d 451, 455

(7th Cir. 2001). As the *Danser* court noted, Congress, in the legislative history of § 2259, cited the Supreme Court's landmark decision in *New York v. Ferber*, 458 U.S. 747 (1982), in which the Court discussed in depth the devastating repercussions of sexual exploitation not only upon the victimized child, but greater society as well. *Id.* Section 2259(c) acknowledges this reality in its inclusion of designated third parties – who are not the direct victims of sexual exploitation but who act on behalf of the exploited child – as "victims" who also may suffer harm as a result of the offense.

Obviously, with regard to lost income, many minor children are far too young to be employed when they are victimized, hence they have no readily ascertainable income to lose. Even if they are employed, it is to be anticipated that their caretakers, such as a legal guardian, will incur their own calculable costs, including loss of income, in their supportive role on behalf of the victim. It appears that such circumstances were contemplated by Congress when it enacted § 2259 and provided "full" restitution for medical expenses, therapy, necessary transportation, child care, lost income, attorney's fees, and any other losses incurred by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3). Thus, we reject Evers' argument that Junior cannot seek restitution for the losses that *he* personally incurred while acting on M.E.'s behalf as her guardian.[3] *Cf. United States v. Tsosie*, 639 F.3d 1213, 1221 (9th Cir. 2011) (holding under 18 U.S.C. § 2248(b)(3), a restitution statute for sexual *abuse* crimes with an identical definition of "victim," that a mother's travel expenses incurred in visiting her victimized daughter at boarding school to offer emotional support were covered losses because "even if the mother *made the trips* in her capacity as a loved family member, she

---

[3]Evers' argument might carry more weight if restitution had been awarded to Junior under the differently worded Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, which "in the case of an offense *resulting in bodily injury to a victim* . . . [requires a defendant to] reimburse *the victim* for income lost *by such victim* as a result of such offense[,]" and allows the legal guardian of a minor victim to "*assume the victim's rights* under this section." 18 U.S.C. § 3663A(a)(2), (b)(2)(C) (emphasis added). One court has interpreted these provisions as precluding restitution to the victim's mother for her lost income, reasoning that because only the minor child suffered bodily injury, the mother was not a "victim" who may be reimbursed for lost income. *See United States v. Wilcox*, 487 F.3d 1163, 1177 (8th Cir. 2007) ("[Section 3663A] simply provides that the court may order the defendant to pay the legal guardian, rather than the victim herself, the restitution owed *to the victim*. [It] does not allow the legal guardian to substitute her own losses for those of the victim.").

*incurred the costs* of the trips in her capacity as legal guardian – that is, she incurred them on behalf of her daughter").[4]

Nonetheless, Junior's ability to collect restitution is not limitless. Section 2259 ties a restitution award to harms caused "as a result" of a defendant's offense. *United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir.), *cert. denied* 132 S. Ct. 756 (2011) (citing § 2259(c)). The nature of the requisite causal connection is the subject of an ongoing debate in the federal circuits. In contrast to other criminal restitution statutes, *see* 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2), and 3771(e), all of which define "victim" as "a person *directly and proximately harmed*" as a result of the commission of an offense for which restitution may be ordered, § 2259 does not contain such language.[5] The first five categories of losses set forth in § 2259(b)(3) have no express proximate cause requirement. Only the catch-all category in subsection (b)(3)(F) specifies "any other losses suffered by the victim *as a proximate result of the offense*." 18 U.S.C. § 2259(b)(3)(F) (emphasis added). This has spawned disagreement in the federal circuit courts regarding whether there is a proximate cause requirement for all categories of losses, or whether a more "general" standard of causation suffices for the losses listed in subsection (b)(3)(A) through (E).

---

[4]Because the parties did not raise the issue, the *Tsosie* court did not consider "whether the expense of regularly traveling the 150-mile distance . . . was a sufficiently foreseeable result of [the defendant's] crime to have been incurred as a 'proximate result of the offense.' 18 U.S.C. § 2248(b)(3)." *Id*. at 1220 n.7. Ultimately, because the district court insufficiently explained its reasons in issuing the restitution order, the Ninth Circuit vacated the order and remanded to the district court to permit the introduction of additional proofs and further explanation by the court. *Id*. at 1223.

[5]18 U.S.C. § 2259 is one of several interrelated criminal restitution statutes passed by Congress with the following timeline:

(1) Congress passed the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. 97-291, 1982 S. 2420. The VWPA enacted the discretionary restitution provisions currently codified in [18 U.S.C.] § 3663, but did not contain § 3663's current definition of "victim" or the mandatory restitution provisions currently codified in [18 U.S.C.] § 3663A; (2) Congress passed the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 1907-1910, which enacted § 2259, including the current definition of "victim" in § 2259(c); (3) Congress passed the Mandatory Victim Restitution Act ("MVRA") as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, which amended existing federal restitution laws and procedures. The MVRA added [18 U.S.C.] § 3663A to the United States Code and established the current definition of "victim" in §§ 3663A(a)(2) and 3663(a)(2) as "a person directly and proximately harmed as a result of a commission of an offense . . . ." 110 Stat. 1228, 1230.

*United States v. Wright*, 639 F.3d 679, 688 n.4 (5th Cir. 2011) (Davis, J., concurring).

The majority of the circuits that have addressed this issue have held that a showing of proximate cause is a necessary element of all claims for restitution sought under § 2259(b)(3). *See United States v. Aumais*, 656 F.3d 147, 153-54 (2d Cir. 2011); *Kennedy*, 643 F.3d at 1261; *Monzel*, 641 F.3d at 535; *United States v. McDaniel*, 631 F.3d 1204, 1208-09 (11th Cir. 2011); *Laney*, 189 F.3d at 965-66; *United States v. Crandon*, 173 F.3d 122, 125-26 (3d Cir. 1999). The *McDaniel* court reasoned, in a nutshell, that "'[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all[,]'" and, therefore, "[t]he phrase 'as a proximate result of the offense' is equally applicable to medical costs, lost income, and attorneys' fees as it is to 'any other losses.'" *McDaniel*, 631 F.3d at 1209 (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)).

In *Monzel*, the D.C. Circuit took a different approach, finding a proximate cause requirement based "not on the catch-all provision of § 2259(b)(3)(F), but rather on traditional principles of tort and criminal law and on § 2259(c)'s definition of 'victim' as an individual harmed 'as a result' of the defendant's offense." *Monzel*, 641 F.3d at 535. The D.C. Circuit explained, "It is a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused. . . . Thus, we will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply." *Id*. at 535-36 (footnote omitted). The court found nothing in the text of § 2259 indicating a Congressional intent to eliminate "the ordinary requirement of proximate cause." *Id*. at 536. To the contrary, "[b]y defining 'victim' as a person harmed 'as a result of' the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused." *Id*. Without such a limitation, "liability would attach to all sorts of injuries a defendant might indirectly cause, no matter how 'remote' or tenuous the causal connection." *Id.* at 537; *see also Aumais*, 656 F.3d at 152-54 (following *Monzel*).

Only the Fifth Circuit, in *In re Amy Unknown*, 636 F.3d 190 (5th Cir. 2011), has held that "proximate causation applies only to the catchall category of harms [in § 2259(b)(3)(F)]." *Id.* at 198. The court interpreted § 2259 as having what it nebulously coined a "built-in," "general" causation requirement and concluded that a proximate cause requirement could not be inferred from the remainder of § 2259's language. *Id.* at 199-201. Interestingly, however, a subsequent panel of the Fifth Circuit, although constrained to follow *Amy Unknown*, issued a special concurrence in which all three judges strongly criticized the *Amy Unknown* decision and urged the Fifth Circuit to grant rehearing en banc, abandon its minority stance, and hold that § 2259 limits recoverable losses to those proximately caused by the defendant's offense. *See United States v. Wright*, 639 F.3d 679, 686-92 (5th Cir. 2011). Indeed, in a very recent development, the Fifth Circuit has now granted rehearing en banc in *Amy Unknown*. *See Amy Unknown*, — F.3d — , 2012 WL 248829 (5th Cir. Jan. 25, 2012).

We find the reasoning of the circuit majority to be persuasive and follow it. "Had Congress meant to abrogate the traditional requirement for everything *but* the catch-all, surely it would have found a clearer way of doing so." *Monzel*, 641 F.3d at 536-37. We further agree with the D.C. Circuit's critique of the *Amy Unknown* decision: "[A] 'general' causation requirement without a subsidiary proximate causation requirement is hardly a requirement at all," because "[s]o long as the victim's injury would not have occurred but for the defendant's offense, the defendant would be liable for the injury." *Id.* at 537 n.8 (citing *Amy Unknown*, 636 F.3d at 200).

We need not choose between the rationales provided in *McDaniel* and *Monzel*, as they are complementary. Both courts provide viable reasons to conclude that restitution awards for all categories of losses set forth in § 2259(b)(3)(A)-(F) require the government to show that the losses were proximately caused by the defendant's offense.

"[E]valuated in light of its common-law foundations[,] proximate cause . . . requires 'some direct relationship between the injury asserted and the injurious conduct alleged.'" *Hemi Group, LLC, v. City of New York*, — U.S. — , 130 S. Ct. 983, 989 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "A link

that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id*. (quoting *Holmes*, 503 U.S. at 271, 274). Guided by case law interpreting the VWPA and the MVRA, which are cross-referenced in § 2259(b)(2), the Ninth Circuit in *Kennedy* has determined that

> for purposes of determining proximate cause [under § 2259], a court must identify a causal connection between the defendant's offense conduct and the victim's specific losses. There may be multiple links in the causal chain, but the chain may not extend so far, in terms of the facts or the time span, as to become unreasonable[.] Although the [d]efendant's conduct need not be the sole cause of the loss, it must be a material and proximate cause, and any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct[.]

*Kennedy*, 643 F.3d at 1262-63 (citations and internal quotation marks omitted). This framework is consistent with our own interpretation of proximate cause in this context. *See United States v. McNulty*, 597 F.3d 344, 350, 352 (6th Cir. 2010) (holding that "[t]he requirement that the victim be 'directly and proximately harmed' [under the Crime Victims' Rights Act, 18 U.S.C. § 3771] encompasses the traditional 'but for' and proximate cause analyses," and "requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked.") (citations and internal quotation marks omitted).

Applying these principles to the present case, we hold that the district court did not err in finding that Junior was a victim within the meaning of § 2259(c), that his claimed lost income in the amount of $1,500, which was documented, was a covered loss under the statute, and that this loss was proximately caused by Evers' criminal conduct. Junior's lost wages were directly attributable to his attendance at various stages of the investigation and trial in support of the victim. It is reasonably foreseeable that the parent or guardian of a minor victim of sexual exploitation will attend proceedings related to the prosecution of the case and, as a consequence, miss work. *Cf. United States v. Searle*, 65 F. App'x 343, 345-46 (2d Cir. 2003) (holding that the purchase of a vehicle and remodeling the victims' guardians' home to accommodate the victims were

recoverable costs under § 2259 because the defendant's actions caused the victims' father to abandon them and lose their home).

However, we agree with Evers that the $140 award for Junior's child care expenses incurred since his arrest must be vacated.  Although § 2259(b)(3)(C) permits restitution for "child care expenses," Evers points out that he was providing free babysitting to Junior, a service that Junior otherwise would have had to pay for.  Absent additional evidence, the link between the child care costs and Evers' crimes is too attenuated to support the restitution award.  We therefore vacate this portion of the restitution order and remand for further proceedings.

IV.

Next, Evers contends that insufficient evidence was presented at trial to justify the forfeiture of his beige computer listed in Count 4 of the indictment ("One (1) Generic tower CPU, beige in color, No Serial Number"), that was found to be subject to forfeiture by the jury.  On this issue, the government confesses error.

Property may be subject to criminal forfeiture when it is the direct or indirect proceeds of the crime of conviction, or was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the underlying offense.  21 U.S.C. § 853(a)(2); *accord United States v. Ferguson*, 385 F. App'x 518, 529 (6th Cir. 2010). "The property must bear a 'sufficient nexus' or 'substantial connection' to the underlying offense."  *Id*. (quoting *United States v. Smith*, 966 F.2d 1045, 1055 (6th Cir. 1992), and citing Fed. R. Crim. P. 32.2(b)(1)).  The government bears the burden of proving forfeiture by a preponderance of the evidence.  *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007).  Findings of fact are reviewed for clear error, and the question whether those facts are sufficient to constitute a proper criminal forfeiture is reviewed de novo.  *Id*.; *see also United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010).

The investigating officers testified that, although Evers' two computers were confiscated from his residence, the focus of the investigation was the black computer's hard drive, which was removed for forensic examination, revealing the offending

images. The forensic agent performed only a "cursory check" of the beige computer's contents, which he testified was only of peripheral interest to the investigators, and found no evidence that bore a nexus to the crimes. The beige computer therefore should not have been the subject of forfeiture, and, accordingly, we vacate this part of the forfeiture order and remand for modification of the judgment consistent with this opinion.

V.

Evers appeals his within-Guidelines 235-month sentence, offering a blended argument that the sentence is both procedurally and substantively unreasonable. Evers focuses on the following comment made by the district court during its review of the 18 U.S.C. § 3553(a) sentencing factors, when it noted Evers' lack of remorse: "[Defendant] took the case to trial, which was his right, and in the course of doing that, of course, he put his minor niece through the trauma of reliving his sexual abuse of her in a courtroom with a judge and a jury and anyone else that happened to be present." Evers objects to the statement on two grounds, arguing that (1) it is evident that the district court punished him for exercising his constitutional right to a jury trial, and (2) the court's observation that the victim was forced to testify in front of "anyone else that happened to be present" is factually incorrect. During M.E.'s testimony, the court cleared the courtroom and turned off the microphones that normally broadcast testimony throughout the courthouse.

We review a district court's sentence for both procedural and substantive reasonableness using the deferential abuse-of-discretion standard. *United States v. Coleman*, 627 F.3d 205, 210-11 (6th Cir. 2010). "A sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness, and it is incumbent upon the defendant to demonstrate that his sentence is unreasonable." *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007). Where, as here, the district court made the requisite *Bostic* inquiry[6] and Evers did not object, we review his

---

[6]*United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004).

unpreserved procedural-reasonableness argument for plain error. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011); *Coleman*, 627 F.3d at 211.

"[A] court 'may not use the sentencing process to punish a defendant . . . for exercising his right to receive a full and fair trial.'" *United States v. Wilcox*, 487 F.3d 1163, 1176 (8th Cir. 2007) (quoting *United States v. Sales*, 725 F.2d 458, 460 (8th Cir. 1984)). In the present case, however, when the sentencing record is considered in totality and the district court's comment is viewed in context, there is no evidence that the court penalized Evers for exercising his constitutional right to plead not guilty and go to trial. In fact, immediately preceding this comment, the court expressed its concern that its factual findings, based on the preponderance-of-the-evidence standard for sentencing purposes, should not be used in "any case in which the defendant might be facing charges of rape or statutory rape or anything of that nature [the state-court case] which would require his plea or a jury trial in which the standard would be beyond a reasonable doubt. . . . I wouldn't want my findings for purposes of sentencing to be misused in any other proceeding."

From a procedural standpoint, the district court reviewed the sentencing calculations and findings of fact set forth in the PSR and adopted them after ascertaining that the parties had no objections. It noted that the Guidelines were advisory; that it had the discretion to vary from the Guidelines within the statutory limits based on § 3553(a) factors; that Evers had requested a below-Guidelines departure based upon his age, health, and absence of criminal history; and that the court's goal in sentencing was to impose a sentence sufficient but not greater than necessary to comply with the purposes of § 3553. The court then thoroughly addressed the § 3553(a) factors in the context of the underlying facts of the case and Evers' background. It ultimately imposed the sentence of 235 months of imprisonment, at the very bottom of the recommended 235-293 months' Guidelines range.

Without question, the district court found the crime to be "egregious" and expressed frustration with the fact that the victim had to testify in court about the sexual acts. However, the court acknowledged Evers' right to take the case to trial. We find

neither plain error in the court's sentencing procedure nor substantive deficiencies that require resentencing. Evers has failed to overcome the presumption that his within-Guidelines sentence is reasonable.

## VI.

Lastly, Evers challenges eleven of the special conditions of supervised release imposed by the district court. These conditions include, inter alia, sex offender treatment using plethysmograph and polygraph, compliance with sex offender registration requirements and participation in mental health treatment as directed by the probation office, and restrictions on computer and internet use subject to approval by the probation office. Evers contends that these conditions involve a "greater deprivation of liberty than is reasonably necessary for the purposes set forth in" 18 U.S.C. § 3553(a)(2)(B)-(D), and they are not "consistent with any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. § 3583(d)(2)-(3).

However, Evers' appeal in this regard is premature in light of the 235-month sentence that he has yet to serve, the leeway afforded the probation department in tailoring many of these special conditions, and the resultant contingencies that may or may not come to fruition. At this point in time, it would be speculative and "'mere conjecture' for this Court to try to define the parameters of [Evers'] future supervised-release conditions." *United States v. Massey*, 349 F. App'x 64, 70 (6th Cir. 2009). As was the case in *Massey* and *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007), Evers' rights "will be better served if his appeal is preserved until after he is released from prison." *Lee*, 502 F.3d at 450.

## VII.

For the foregoing reasons, the judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.