NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0021n.06

No. 24-3298

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

FOUAD SAEED ADBULKADIR,

     Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 16, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Fouad Saeed Abdulkadir defrauded the State of Ohio and the United States by underreporting his income to receive unemployment and health insurance benefits. A jury convicted him of wire fraud and theft, and the district court sentenced him to 21 months' imprisonment. He challenges on appeal the sufficiency of the evidence supporting his convictions, the district court's limitation of certain witness testimony, and the reasonableness of his sentence. We affirm.

I.

For several years, Abdulkadir claimed that he had no income and that he spent his time volunteering for the Islamic Center of Northeast Ohio (ICNEO). He also submitted forms (such as weekly volunteer timesheets) to government agencies, which were prerequisites to receiving public assistance. As a result, he received $15,367 from the State of Ohio's Temporary Assistance

to Needy Families (TANF) public assistance program, $23,599 from the Supplemental Nutrition Assistance Program (SNAP), and $41,559.24 in Medicaid benefits.

An investigation revealed that defendant did not qualify to receive these public benefits because he received compensation and had other income. So a grand jury indicted him on 27 counts of wire fraud in violation of 18 U.S.C. § 1343; 23 counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); and two counts of theft of public money in violation of 18 U.S.C. § 641.

At trial, testimony disclosed that Abdulkadir received payment for his roles as imam, resident scholar, and drafter of the ICNEO's constitution despite his certification that he was an unpaid volunteer. He similarly received payments and reimbursements for his work at the Islamic Center of Wheaton, Illinois (ICW). Abdulkadir then opened many personal and business bank accounts and formed limited liability entities to hide funds. For example, Abdulkadir had sole and complete control over one of his many restaurant's bank accounts, which received thousands of dollars in cash payments from investors. His bank and business records indicated that his income exceeded the thresholds for all three public assistance programs.

Following trial, the jury found Abdulkadir guilty of 24 counts of wire fraud and two counts of theft of public money, and it found him not guilty for all counts of aggravated identity theft and three counts of wire fraud. The district court imposed a within-Guidelines sentence of 21 months' imprisonment. This timely appeal followed.

II.

Abdulkadir first argues that there was insufficient evidence to support his convictions for wire fraud and theft of public money. A sufficiency-of-the-evidence challenge must fail if "a rational jury could have found the elements of the crime beyond a reasonable doubt." *United*

*States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018). Abdulkadir's burden is "very heavy" because we do "not judge the credibility of witnesses or weigh evidence," and we draw "all reasonable inferences in the government's favor." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005).

## A.

To sustain a wire-fraud charge under 18 U.S.C. § 1343, the government must prove "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024) (footnote and citation omitted). "A scheme to defraud includes any plan or course of action by which someone intends to deprive another by deception of money or property by means of false or fraudulent pretenses, representations, or promises." *Id.* (ellipsis omitted). The "essence" of the crime is that "the victim is persuaded to believe that which is not so." *Id.* at 355.

Any rational jury could conclude that Abdulkadir's conduct meets these elements. He submitted fraudulent timesheets and falsely reported that he had no income to receive funds for which he did not qualify—a scheme to intentionally deprive the government of public-assistance funds. The government presented witnesses and documentation establishing that defendant represented his income was zero and his bank accounts had only de minimis funds; but at the same time, he received funds from several sources, including two restaurants, the ICNEO, and the ICW, and he had access to thousands of dollars across numerous bank accounts. And the evidence demonstrated that Abdulkadir used wires (emails and faxes) to facilitate his fraudulent scheme and to receive the public-assistance funds.

Abdulkadir unpersuasively asserts that the government did not prove a scheme to defraud or that he knew his income exceeded TANF's income ceiling. But circumstantial evidence is sufficient to sustain a conviction. *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996). And here, a reasonable jury could conclude, based on circumstantial evidence, that he engaged in intentionally fraudulent conduct. That is, his representations that he had no income and little-to-no funds were not an innocent oversight; rather they were a scheme to obtain public funds by creating nearly 40 bank accounts and receiving payments only in cash from his restaurants, ICNEO, and the ICW.

The evidence was therefore sufficient to sustain the wire-fraud convictions.

B.

Theft of public money requires embezzling, stealing, purloining, or knowingly converting money or property belonging to the United States. 18 U.S.C. § 641. The government must prove that defendant: "(1) knowingly (2) stole or converted to the use of another (3) something of value of the United States." *United States v. Osborne*, 886 F.3d 604, 608 (6th Cir. 2018).

As explained above, a jury could reasonably find that Abdulkadir's conduct—intentionally submitting false qualifying statements to receive government funds—constituted stealing or converting. Thus, his contention that the government voluntarily and intentionally transferred the funds to his account is without merit. We therefore affirm the theft-of-public-money convictions.[1]

---

[1]To the extent that Abdulkadir challenges the district court's jury instructions as to the definitions of "value," "embezzle," and "steal," he forfeited this issue by failing to list it in his statement of issues on appeal. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). And even if he had preserved this issue, it is without merit. Because he failed to object to the jury instructions in district court, we would review the jury-instruction challenge for plain error only. *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007). He cannot overcome this high hurdle. For one, he makes no argument that the instructions themselves, "viewed as a whole, were confusing, misleading, and prejudicial." *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021) (citation omitted). And for another, his citation to mostly out-of-circuit cases concerning the

III.

Abdulkadir next challenges the district court's decision to limit Nasir Abdulrahman's testimony. Before trial, Abdulkadir submitted a witness list indicating his intent to call Abdulrahman to testify about "Muslim customs regarding loans without paperwork" and about money he personally loaned to defendant. Following the government's objection, the district court held that although Abdulrahman could testify about his personal experience lending money to Abdulkadir, he was not qualified to testify about Muslim lending practices.

We review a district court's evidentiary rulings for an abuse of discretion, which occurs when we are "firmly convinced that a mistake has been made, *i.e.*, when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Miner*, 774 F.3d 336, 348 (6th Cir. 2014). We have no such conviction here, where the district court did not allow generalized testimony about Muslim lending practices from a single member of the Muslim community who had no specialized knowledge, training, experience, or education on the topic.

Although defendant attempted to offer Abdulrahman as a lay witness, the court correctly surmised that his proffered testimony about Muslim culture and practices required expert credentials that he did not have. *See* Fed. R. Evid. 701(c). Abdulrahman could testify "rationally based on [his] perception" about his own experiences lending to defendant, *see* Fed. R. Evid. 701(a), but not as an expert in Muslim lending practices because Abdulkadir neither proffered foundation for any specialized knowledge nor provided the government with required expert disclosures, *see* Fed. R. Crim. P. 16(b)(1)(C), (c).

---

definitions of theft, embezzlement, and conversion that were not before the jury does not identify binding caselaw from our court that calls the district court's instructions into question. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

Thus, the district court did not err by limiting Abdulrahman's testimony.

IV.

Last, we review Abdulkadir's procedural and substantive reasonableness challenges to his sentence under the deferential abuse-of-discretion standard. *United States v. Evers*, 669 F.3d 645, 661 (6th Cir. 2012).

A.

Procedural reasonableness requires us to determine whether the district court improperly calculated the Guidelines range, treated the Guidelines as mandatory, failed to consider the 18 U.S.C. § 3553(a) factors, based its sentence on erroneous facts, or failed to adequately explain the sentence. *United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013); *Gall v. United States*, 552 U.S. 38, 51 (2007). The court made none of these errors.

When calculating the Guidelines range, the district court did not "disregard" the pre-sentence report, as defendant alleges. First, the court accurately established a base offense level of seven for 18 U.S.C. § 1343 offenses under Guideline § 2B1.1. Next, it addressed Abdulkadir's objection to the application of § 2B1.1(b)(10), which increases the base offense by two levels when the theft offense "involved sophisticated means." The court rejected Abdulkadir's argument that his several businesses and many bank accounts did not require sufficient "sophistication" to apply this enhancement. Rather, it explained that "the way in which these [businesses] were operated" and "the monies were flowing" indicated that Abdulkadir "controlled the cash." To be sure, the court reasoned, "this was a very multilayer set of accounts," which allowed money "to flow primarily to Mr. Abdulkadir." Ultimately, the court concluded, "this was a very sophisticated operation" that permitted Abdulkadir to "really manipulate things and hide what he was doing." The court's well-reasoned application of § 2B1.1(b)(10) was not an abuse of discretion.

Nor was the court's application of § 3B1.3, which adds two levels if "the defendant abused a position of public or private trust" to facilitate the offense. After hearing arguments from both sides, the court found that Abdulkadir played "a key role" in the ICNEO as a resident scholar and imam. The court explained that, in his role, Abdulkadir "held significant rights and privileges" constituting "a position of trust." And the court found that he abused that position of trust to "facilitate the commission of the offense" in part by accepting money in his roles as imam and drafter of the ICNEO's constitution and fraudulently representing to the government that he was merely a volunteer who made no income. The court's application of a two-level enhancement under § 3B1.3 was appropriate in its discretion.

B.

A sentence is substantively unreasonable if it is "too long" because the district court "placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Because the court properly calculated the Guidelines range of 18 to 24 months' imprisonment, we presume that Abdulkadir's within-Guidelines sentence of 21 months is reasonable. *See Evers*, 669 F.3d at 661. Defendant's substantive-reasonableness arguments do not overcome this presumption.

Abdulkadir argues that the district court failed to adequately account for his "physical and mental condition and his role in and massive support by his family and community." Not so. The court acknowledged defendant's torture in Saudi Arabia; his resulting PTSD and physical ailments related to his ankles, knees, and shoulders; and his ADHD diagnosis. Additionally, the court recognized that many of his family members wrote letters of support, that he has been twice married and twice divorced, that he is a father to four children who reside in Egypt and Texas, and

that he is in a relationship with a woman in Ohio who has two children of her own. Neither party objected to the court's description of Abdulkadir's history and characteristics.

After the court heard testimony from two of defendant's witnesses who attested to his good character, the court conceded that "some of what was said in support of Mr. Abdulkadir was correct, [but] it still doesn't justify" his conduct. Although the court acknowledged Abdulkadir's "mental health issues," it found that his "deceit" in his fraudulent activities, particularly when he had other income and funds available, justified "a mid range sentence."

Thus, contrary to Abdulkadir's argument on appeal, the court considered all his history and characteristics and decided that they did not justify a lower sentence when weighed against his criminal conduct. This was not an abuse of discretion, but rather a thorough sentencing analysis supported by the record.

V.

For these reasons, we affirm.