RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0268p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

Nos. 12-5056/5565

ALAN LEE CHURCH aka Allen Lee Church
(12-5056) and SCOTT ANTHONY REISDORFER
(12-5565),

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:11-cr-00021—Amul R. Thapar, District Judge.

Decided and Filed: September 10, 2013

Before: DAUGHTREY, McKEAGUE, and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** David S. Hoskins, Corbin, Kentucky, for Appellant in 12-5056. Patrick F. Nash, Lexington, Kentucky, for Appellant in 12-5565. Charles P. Wisdom, Miguel Dickson, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. Federal prisoners Alan Lee Church and Scott Anthony Reisdorfer each pleaded guilty to one count of assaulting an inmate resulting in serious bodily harm, in violation of 18 U.S.C. §113(a)(6). They were sentenced to 57 and 65 months in prison, respectively. Church appeals the district court's denial of his motion for a downward departure based on his claim that the victim provoked his conduct (12-5056). Reisdorfer appeals the district court's restitution order,

1

challenging the court's decision to make it payable to a third party – the federal Bureau of Prisons (BOP) (12-5565). For the reasons set out below, we find no error in connection with the district court's sentencing orders and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to the charges in this case stemmed from a disturbing lack of supervision at the Big Sandy federal penitentiary in Inez, Kentucky. On February 6, 2011, inmates at Big Sandy celebrated Super Bowl Sunday by drinking contraband liquor, and one prisoner, Dewayne MacAnally, drank enough to become belligerent. He told Alan Lee Church, an inmate in the same housing unit, that he intended to stab another inmate, Scott Reisdorfer, with a shank (a homemade knife) that he had stored nearby. There was a history of bad blood between MacAnally and Reisdorfer, stemming from Reisdorfer's demotion from a leadership position in the local branch of the Aryan Brotherhood, and MacAnally's subsequent promotion to that position. Church, who, as the Captain of the Aryan Brotherhood chapter, outranked both Reisdorfer and MacAnally, hit MacAnally in the face to force him to abandon his plan to harm Reisdorfer. MacAnally started crying and apologized to Church, but he eventually became belligerent again. Church then physically restrained MacAnally from going after Reisdorfer, telling MacAnally to go to his cell and stay there. In order to ensure that MacAnally actually stayed in his cell and out of trouble, Church ordered another inmate, Joshua McBee, to stand guard in front of MacAnally's cell. He also removed all of the weapons that MacAnally had stored in McBee's locker and gave the weapons to Reisdorfer and McBee for safe keeping.

Sometime later in the evening, as Church entered MacAnally's cell to speak with him, Reisdorfer also entered the cell. MacAnally got angry and made a comment to Reisdorfer about knocking his tooth out. Reisdorfer responded by hitting MacAnally in the head, knocking him to the ground. At that point, Church told Reisdorfer to "kick [MacAnally's] ass and put him to bed" and left the cell. Reisdorfer, who was carrying a shank (something Church claims not to have known at the time), proceeded to beat and stab MacAnally and then went to get Church. When the two men returned to the cell,

they found MacAnally lying unconscious on the cell floor, making "a funny noise," and bleeding profusely. Church positioned MacAnally's head so that he would not choke on his own blood but otherwise took no action, leaving MacAnally alone in the cell until the guards found him later that night. Upon his discovery by the guards, MacAnally was immediately rushed to a nearby hospital, where he was found to have suffered massive head trauma, a collapsed lung, and two stab wounds in his back. He was subsequently transferred to the Federal Medical Center in Butner, North Carolina, and has not regained consciousness since the attack. MacAnally's doctor at Butner reports that he suffered severe brain damage and will likely never wake up.

Church was subsequently indicted on one count of assaulting an inmate resulting in serious bodily harm, in violation of 18 U.S.C. § 113(a)(6). Reisdorfer was indicted on three counts of assault, in violation of 18 U.S.C. §§ 113(a)(1), (a)(3), and (a)(6), and one count of knowingly possessing a prohibited weapon, in violation of 18 U.S.C. § 1791(a)(2).

Church later pleaded guilty to the assault charge and filed a motion for a downward departure pursuant to USSG § 5K2.10, which allows courts to depart from the guidelines when the victim's conduct significantly contributes to provoking the defendant's offending behavior. The district court denied Church's § 5K2.10 motion but nonetheless imposed a below-Guidelines sentence of 57 months, to run consecutively to Church's existing sentence.

Reisdorfer pleaded guilty to the same assault charge, in exchange for the government's agreement to dismiss the other three counts against him, and was sentenced to 65 months of imprisonment. The judge concluded that restitution was obligatory but reserved judgment on the amount of restitution that Reisdorfer owed, to see if the parties could reach agreement on an amount. Their efforts were unsuccessful, leading the district court to schedule a restitution hearing to settle the issue. Following the hearing, the judge entered an amended judgment, ordering Reisdorfer to pay the BOP restitution in the amount of $121,496.56.

Church now appeals the court's refusal to grant a downward departure. Reisdorfer appeals the restitution order.

## DISCUSSION

### The Denial of a Downward Departure (12-5056)

Church contends that the district court erred when it denied his motion for a downward departure pursuant to USSG § 5K2.10. That guideline provides that if a victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. It also lists six factors that courts should consider when deciding whether a sentence reduction is warranted. These include:

> (1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.
>
> (2) The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.
>
> (3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.
>
> (4) The danger actually presented to the defendant by the victim.
>
> (5) Any other relevant conduct by the victim that substantially contributed to the danger presented.
>
> (6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

*Id.*

In this circuit, a district court's decision not to depart downwards is considered unreviewable, except where there is clear evidence that "the lower court incorrectly believed that it lacked authority to grant such a departure." *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008); *see also United States v. Crouch*, 288 F.3d 907, 910 (6th Cir. 2002) ("We will presume that the district court understood its discretion to depart, absent clear evidence in the record to the contrary."). If, however, a district court recognizes its discretion, we will review a district court's decision only if: "(1) the

sentence was imposed in violation of the law; (2) it was imposed as a result of an incorrect application of the guidelines; (3) the sentence represented an upward departure; or (4) the sentence was imposed 'for an offense for which there is no Sentencing Guideline and is plainly unreasonable.'" *United States v. Puckett*, 422 F.3d 340, 346 (6th Cir. 2005) (quoting 18 U.S.C. § 3742(a)).

Here, there is no clear evidence that the district court failed to understand its discretion to depart downward. To the contrary: at the sentencing, the district judge made it clear that the reason he was denying Church's motion was not because he believed he lacked the power to grant it, but because he believed doing so was inappropriate, given the circumstances of the case. ("[T]he reality of the 5K2.10 motion is I will deny that because I don't find that the factors are met.")

On appeal, Church argues that the judge's decision not to depart is nevertheless reviewable by this court because it was imposed as a result of an incorrect application of the Sentencing Guidelines. More specifically, Church claims that the judge grafted a duress requirement onto § 5K2.10 when he concluded that Church was not entitled to a departure because he could have responded to MacAnally's aggressive behavior by calling the prison guards, rather than by assaulting him. Church also argues that when the judge noted during sentencing that his interpretation of the § 5K2.10 factors was influenced by his desire to foster civility in the institution of the prison, he "add[ed] a requirement not present in the guidelines" by suggesting that "different rules should apply because the defendant is a prisoner."

We find no merit to these arguments. At sentencing, the district judge clearly indicated that he considered the fact that Church could have, but did not, call the prison guards relevant specifically to the fourth and sixth § 5K2.10 factors, rather than as an independent factor in its own right. The judge concluded that Church's failure to call for assistance likely meant that MacAnally did not represent a genuine danger to him (relevant to the fourth § 5K2.10) and that the physical force he used in response to MacAnally's belligerence was therefore disproportional and unreasonable (relevant to the sixth § 5K2.10 factor). The judge did not, therefore, graft an additional duress

requirement onto § 5K2.10, but merely took Church's other options into account when applying the § 5K2.10 factors.

The record clearly establishes that the district court's denial of a departure was not based on an incorrect application of the Sentencing Guidelines.  Hence, it is not reviewable on appeal and must be upheld.

## The Restitution Order (No. 12-5565)

Reisdorfer contends that the district court erred in ordering him to pay $124,396.56 in restitution to the BOP pursuant to 18 U.S.C. § 3663A, which requires that a defendant convicted of a crime of violence "make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."  18 U.S.C. § 3663A(a)(1). Reisdorfer challenges the restitution order on two grounds.  First, he argues that it was improper because the BOP was neither a victim of the offense nor responsible for providing compensation to the victim of the offense.  Alternatively, Reisdorfer argues that the restitution order was improper because no evidence was presented to the district court showing that Reisdorfer, rather than Church, was responsible for all of the costs that the BOP incurred in providing MacAnally's medical treatment after the attack.

We review the propriety of a restitution order de novo.  *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir. 2006).  "Because federal courts have no inherent power to award restitution," restitution orders are proper "only when and to the extent authorized by statute."  *United States v. Evers*, 669 F.3d 645, 655-656 (6th Cir. 2012) (internal quotation marks omitted).  The amount of the restitution award is subject to review under an abuse-of-discretion standard.  *United States v. Elson*, 577 F.3d 713, 733 (6th Cir. 2009).  Under this standard, neither of Reisdorfer's challenges to the restitution order has merit.

## Third Party Restitution

Reisdorfer first contends that the restitution order is improper because it requires him to provide restitution to the BOP, which was not a victim of his offense.  The assertion that the BOP is not a victim is technically correct under 18 U.S.C.

§ 3663A(a)(2), which provides that "[f]or the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." The BOP was clearly not "directly and proximately" harmed by Reisdorfer's assault on MacAnally, but instead suffered expenses only after the assault, when it was forced to expend significant resources providing MacAnally with medical care. Indeed, in its reply brief, the government concedes that the BOP was not a "direct victim" of Reisdorfer's offense.

Whether the BOP constitutes a "victim" for purposes of § 3663A is not, however, ultimately dispositive of the legality of the restitution order, given two statutory provisions that indicate that restitution must, in certain cases, be awarded to entities other than the actual victim of the offense. The first is 18 U.S.C. § 3663A(b)(2), which provides that "in the case of an offense resulting in bodily injury to the victim . . . [the order of restitution shall require that the defendant] (A) pay an amount equal to the cost of [the victim's] necessary medical and related professional services…; (B) pay an amount equal to the cost of [the victim's] necessary physical and occupational therapy and rehabilitation; and (C) reimburse the victim for income lost by such victim as a result of such offense."

The second provision is 18 U.S.C. § 3664(j), which is incorporated into § 3663A by § 3663A(d). Section 3664(j) provides that when a victim "has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." Hence, the first provision indicates that perpetrators of crimes of violence must pay the total amount of the cost of their victim's medical expenses, not just those the victim personally incurred. The second provision makes this evident when it expressly authorizes restitution to insurance companies and to other entities that provide compensation to the victim for his or her losses.

Reisdorfer acknowledges that §§ 3663A and 3664 require courts to order defendants like him to provide restitution to insurance companies and other third parties that provide monetary compensation for a victim's medical expenses. However, he

denies that the statutes authorize payment to third parties such as the BOP that provide only non-monetary assistance – in this case, medical treatment – to victims. Reisdorfer argues that, in such cases, there is no "loss" that can be compensated under § 3664(j) because the victim of the offense never incurs, even in principle, the medical costs identified in § 3663A(b)(2)(A) and (B) as proper subjects of restitution.

We disagree. Although the question of whether defendants are obligated to provide restitution to third-party medical providers under § 3663A is a question of first impression in this circuit, the two circuits that have squarely addressed the question have concluded that third-party medical providers are entitled to restitution when they pay some or all of the cost of the victim's medical treatment themselves. See *United States v. Johnson*, 400 F.3d 187, 200 (4th Cir. 2005); *United States v. Cliatt*, 338 F.3d 1089, 1091 (9th Cir. 2003). Both circuit courts reached this conclusion on the basis of the expansive language in § 3663A(b)(2). *Johnson*, 400 F.3d at 200 ("The careful choice of words [in § 3663A(b)(2)] indicates a legislative intent to require those convicted of crimes resulting in bodily injury to pay the entire 'amount equal to the cost of necessary medical . . . services,' even when the provider of the services has not taxed the victim herself with the full amount of those costs."); *Cliatt*, 338 F.3d at 1091 ("The . . . require[ment that] a defendant 'pay an amount equal to the cost' of necessary medical and similar care . . . expresses Congress' intention that a defendant must, in every case involving bodily injury, pay what it costs to care for the victim, whether or not the victim paid for the care or was obligated to do so.") The Second Circuit has reached the same conclusion as to restitution awards authorized under 18 U.S.C. § 3663, which, like § 3663A, requires defendants to "pay an amount equal to the cost of [their victim's] necessary medical and related professional services." 18 U.S.C. § 3663(b)(2)(A); *United States v. Malpeso*, 126 F.3d 92, 95 (2d Cir. 1997).

As these decisions indicate, there is strong textual support for the interpretation of the statute that the Fourth and Ninth Circuit have adopted. In contrast to other restitution statutes, such as 18 U.S.C. § 2248(b), that expressly limit a defendant's restitution obligations to those costs that victims incurred themselves (requiring the court

to "direct the defendant to pay to the victim . . . the full amount of the victim's losses" and defining the "full amount of the victim's losses" as "costs incurred by the victim"), § 3663A(b)(2) requires that defendants pay "an amount equal to the cost of the medical treatment." This somewhat awkward phrasing suggests that Congress did not intend that defendants would have to pay only the victim's actual costs.

The legislative history of the statute also supports this interpretation. When Congress enacted § 3663A as part of the Mandatory Victims Restitution Act (MVRA), its stated purpose was "to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society." S. Rep. 104-179, at 12 (1995) (emphasis added). The interpretation of the statute that Reisdorfer urges on us would undermine legislative purpose by prohibiting courts from requiring defendants to provide full restitution for the costs that their criminal behavior caused, if not to the victim personally, then to other institutions such as the BOP. That is clearly a result that Congress could not have intended.

We therefore endorse the interpretation of § 3663A adopted by the Fourth and Ninth Circuits and conclude that the district court was correct when it found Reisdorfer obligated under the statute to pay restitution to the BOP for the necessary medical expenses that it incurred on MacAnally's behalf.

**Causation**

Reisdorfer argues, in the alternative, that even if he is obligated under § 3663A to provide some amount of restitution to the BOP, the district court's restitution order was improper because there was no proof that he, rather than Church, was responsible for all of MacAnally's injuries and, therefore, all the BOP's medical expenses. The district court held that such proof was not necessary, given 18 U.S.C. § 3664(h), which expressly authorizes courts that "find[] that more than 1 defendant has contributed to the loss of a victim . . . [to] make each defendant liable for payment of the full amount of restitution." Under § 3664(e), the court concluded that all that was necessary to "hold both Defendants fully liable for the restitution amount" was evidence that they both contributed to MacAnally's injuries in some way. The fact that "Reisdorfer and Church

. . . admitted to injuring MacAnally through a crime of violence" when they pleaded guilty provided this evidence. The court accordingly held both defendants jointly and severally liable for the total amount of the BOP's medical expenses and ordered Reisdorfer to pay restitution in the full amount.

Reisdorfer argues that the district court erred in imposing this order because § 3664(h) applies only in cases involving multi-defendant conspiracies. He notes correctly that all the cases in which we have imposed on one or more defendants liability for the total amount of the loss have involved conspiracy convictions. *See United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012) (imposing full liability under § 3664(h) on defendant convicted of conspiracy to defraud the government); *United States v. Williams*, 612 F.3d 500, 513 (6th Cir. 2010) (acknowledging that the amount of restitution the defendant was ordered to pay under the MVRA "may well be disproportionate when compared to that of his codefendants" but affirming the legality of the restitution order nonetheless on the grounds that "by participating in a conspiracy to commit healthcare fraud, Williams bore the risk of becoming financially responsible for the entire amount of the conspiracy victims' losses"); *United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) (affirming imposition of joint and several liability for the total restitution amount on four defendants convicted of conspiracy to commit fraud). The same appears to be true in other circuits as well. *See, e.g.*, *United States v. Nucci*, 364 F.3d 419, 424 (2d Cir. 2004) (affirming imposition of joint and several liability for the total loss on defendant convicted of conspiracy to commit robbery and use of a firearm during a robbery).

However, nothing in the text of § 3663A or § 3664 suggests that § 3664(h) applies only to defendants convicted of conspiracy. Instead, it authorizes the imposition of full liability on any defendant who the district court finds "contributed to the loss." Courts have, of course, struck down restitution awards in cases where there was no evidence that a defendant contributed in any way to the loss that resulted from the offense of conviction. *See, e.g.*, *United States v. Squirrel*, 588 F.3d 207, 213 (4th Cir. 2009) (striking down restitution order against defendants whose offenses did nothing to

cause or increase the victim's harm). But, we know of no case in which the court struck down a restitution order that imposed full restitution on a defendant who, like Reisdorfer, clearly did contribute to the victim's loss, even if to an indeterminate extent.

Reisdorfer's interpretation of § 3664(e) is thus entirely unpersuasive. A better reading of § 3664(e), and the one we adopt here, is that in the case of a dispute over restitution, the government is obligated to prove – by a preponderance of the evidence – the total amount of the victim's (or third party's) losses, not the total amount of losses that result solely from the defendant's conduct. This interpretation avoids any conflict between § 3664(e) and § 3664(h) and comports with existing case law. It follows that the district court was correct when it concluded that individual restitution findings were not required.

Interpreting the statute in this way is not to say that courts may impose liability for full restitution without proof of a causal connection between the offense and the loss. Under § 3664(h), courts must find that the defendant "contributed" to the loss, i.e., that the defendant's criminal conduct directly and proximately caused the loss. Indeed, the legislative history of the MVRA makes clear that Congress did not intend to make defendants liable for losses they did not proximately cause. See S. Rep. No. 104-179, at 19 ("The committee intends that . . . mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted."); *see also Evers*, 669 F.3d at 658 ("'It is a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused. . . . Thus, we will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply.'" (quoting *United States v. Monzel*, 641 F.3d 528, 535-536 (D.C. Cir. 2011)).

In this case, the record clearly establishes that Reisdorfer's assault was one of the direct and proximate causes of MacAnally's injuries and, therefore, the BOP's costs. "Evaluated in light of its common-law foundations, proximate cause requires 'some

direct relationship between the injury asserted and the injurious conduct alleged.'" *Evers*, 669 F.3d at 659 (quoting *Hemi Group, LLC, v. City of New York*, 559 U.S. 1, 14 (2010)) (internal punctuation removed). Under this standard, "'the [d]efendant's conduct need not be the sole cause of the loss, [but] it must be a material . . . cause, and any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct.'" *Evers*, 669 F.3d at 659 (quoting *United States v. Kennedy*, 643 F.3d 1251, 1262-1263 (9th Cir. 2011)). Although Church's assault may also have contributed to MacAnally's harm, there is no question that Reisdorfer's conduct was also a "material cause" of the severe injuries that MacAnally sustained.

It follows that the district court did not abuse its discretion when, pursuant to § 3664(h), it ordered Reisdorfer to provide restitution to the BOP in the full amount of its loss.

**CONCLUSION**

For the reasons set out above, we AFFIRM the district court's judgment in cases 12-5056 and 12-5565, including the sentencing orders pertaining to both defendants.