NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0207n.06

Case No. 23-5108

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td>v.</td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td></td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td>KENT BOOHER,</td><td>)</td><td>DISTRICT OF TENNESSEE</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td style="padding-left:2em">Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>O P I N I O N</td></tr>
</table>

FILED
May 08, 2024
KELLY L. STEPHENS, Clerk

Before: WHITE, STRANCH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Kent Booher was convicted in the Eastern District of Tennessee of two counts of attempted enticement of a minor, one count of committing an additional felony offense involving a minor while registered as a sex offender, one count of sex trafficking a child, and one count of attempted production of child pornography. Booher's convictions stemmed from his sexual activity with a 14-year-old girl ("K.V.")[1] in 2012 and 2013 and his attempted sexual activity with an undercover officer posing as a teenage girl in 2019. Following the jury's guilty verdict on all charges, the district court sentenced Booher to life in prison and ordered him to pay K.V. $262,327.50 in restitution for the extensive therapy and other recovery assistance she will

---

[1] In accordance with Federal Rule of Appellate Procedure 25(a)(5), we refer to the victim, who was a minor at the time of these events, by her initials.

need. Booher appeals the restitution order, arguing that the district court had an insufficient basis on which to assess him this amount. We disagree and affirm.

**I.**

*Booher's Sexual Relationship with a Minor.* Between 2012 and 2013, Booher repeatedly engaged in sexual activity with K.V., an underage teenage girl, on multiple occasions. Booher was a licensed attorney at the time who had represented K.V.'s father about 10 years prior on a drunk driving charge. Booher met K.V. in 2012 through a friend of K.V.'s mother, who had advised K.V. that Booher was someone from whom the two could obtain money to purchase pills to support their mutual drug habit. On their first meeting, K.V. performed a sexual act on Booher in exchange for money. K.V. testified that Booher eventually had intercourse with her at least twelve times when she was 14 to 15 years old. Booher routinely gave K.V. money and other gifts in exchange for sex.

K.V. grew up in a difficult environment. Her father suffered from alcoholism, her mother was addicted to drugs, and K.V. herself was addicted to opiates by age 12. By the time she met Booher, K.V. had been sexually abused by another male who first gave her pain pills in exchange for sex, and she had been "kicked out of school" due to truancy. (R. 114, PageID 2303). She was supposed to be homeschooled but did not have the necessary supplies—such as a computer—to accomplish this. Furthermore, K.V.'s living arrangements with her parents and brother in an apartment complex in Lenoir City, Tennessee were disrupted when her mother was arrested and sent to jail for a few months. During this time, the Tennessee Department of Children's Services sent K.V. to live with her grandmother about seven minutes away from her parents.

While her mother was away, K.V. also sometimes stayed with Malina Akin, her mother's friend who lived in the same apartment complex as K.V.'s parents. In November, 2012, K.V. and

Akin were both desperate for pills to avoid withdrawal symptoms when Akin introduced K.V. to Booher. Akin knew Booher because he was a criminal defense attorney who had previously represented her. K.V. was to perform "[s]exual favors" for Booher in exchange for the money. (*Id.* at 2309). K.V. had sex with Booher at Akin's apartment about five other times—receiving money from him each time.

Throughout the course of their interactions, Booher contacted K.V. via Heywire, an anonymized internet-based text and calling service. Booher and K.V. established a code word to ensure that Booher was in communication with K.V. when he reached out. In one exchange, after using the code word, Booher asked K.V. for pictures of her genitals. K.V. had previously sent Booher a naked full-body photo of herself at his request. Booher also bought K.V. numerous gifts for having sex with him. For instance, Booher purchased a cellphone for K.V. and paid for her plan so he could communicate with her directly. Booher also took K.V. out to eat, paid for tanning services, and bought her a "promise" ring, saying she could be emancipated from her parents when she turned 16 and the two could marry. Booher provided K.V. an iPad for her to complete schoolwork because her parents could not afford a computer. Additionally, Booher took K.V. to a drug dealer's house and purchased pills from the dealer on her behalf at least three times.

In May 2013, K.V. realized that she no longer wanted to be on drugs or have sex with Booher for money. She informed a neighbor that Booher was paying her for sex, and the neighbor contacted law enforcement. Police interviewed K.V. about the allegations. Officers later extracted data from K.V.'s cell phone and iPad and seized and searched a computer from Booher's residence that he used to access Heywire. At trial, both Akin and K.V.'s mother testified that they had witnessed Booher having sex with K.V. And Akin also testified that Booher once told her that he was "addicted" to K.V. in the same way that Akin was addicted to pills. (R. 113, PageID 2202).

The State of Tennessee charged Booher with three counts of aggravated statutory rape, in violation of Tennessee Code § 39-13-506; one count of especially aggravated sexual exploitation of a minor, in violation of Tennessee Code § 39-17-1005; and one count of solicitation of a minor, in violation of Tennessee Code § 39-13-528.  In September 2014, Booher pleaded guilty in state court to two counts of statutory rape.  Booher received a three-year suspended sentence of probation and was required to register as a sex offender.

*Booher's Attempted Enticement of an Undercover Agent Posing as a Teenage Girl.*  In 2019, Booher attempted to strike up a sexual relationship with another teenager, but his efforts were thwarted when the "teenager" turned out to be an undercover law enforcement agent.  Despite being told that the agent was 16 years old, Booher made repeated sexual advances toward the agent over Facebook, by phone, and through text messages.  He also discussed specific sexual acts, detailed his personal sexual preferences, and arranged to meet with her.  As he was driving to meet the "16-year-old" girl, the police stopped his vehicle about a mile away from the location and arrested him.

*Booher Is Tried and Convicted.*  A federal grand jury indicted Booher on five offenses: two based on his conduct toward the undercover agent in 2019, and three based on his conduct with K.V. in 2012 and 2013.  Specifically, the indictment charged Booher with enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One); commission of a felony sexual offense involving a minor while on a sex offense registry, in violation of 18 U.S.C. § 2260A (Count Two); sex trafficking of a child, in violation of 18 U.S.C. § 1591 (Count Three); attempted production of child pornography, in violation of 18 U.S.C. § 2251 (Count Four); and enticement of a minor in violation of 18 U.S.C. § 2422(b) (Count Five).

At trial, the jury found Booher guilty on all counts. The district court sentenced him, within the advisory guideline range, to life plus 120 months in prison, followed by 15 years of supervised release.

*Booher Is Ordered to Pay Restitution.* At sentencing, the government asked the court to order Booher to pay $524,655.00 in restitution to K.V. In support of its request, the government presented testimony from a clinical psychologist, Dr. Christopher Watkins, who opined that K.V. would require "lifelong treatment" costing at least that amount, because she had suffered multiple "traumatic experiences . . . at a developmentally-sensitive period . . . combined with opioid use," which together caused "a lot of damage to [her] psychological functioning and social interactions." (R. 119, PageID 2624–25). Booher countered that he should not be held responsible for the full amount of K.V.'s treatment costs, because K.V. had also been sexually abused by others, both before and after he met her. Booher also denied ever providing drugs to K.V. or facilitating her addiction. On cross-examination, Dr. Watkins acknowledged that he could not quantify exactly how much of K.V.'s trauma was attributable to Booher's offenses against her.

The district court found that all three statutes of conviction for Booher's offenses involving K.V. mandated that restitution be ordered for "the full amount of the victim's losses." (*Id.* at 2628–29 (citing 18 U.S.C. §§ 1593(b)(1), 2259(b)(1), 2429(b)(1))). The court also found that "the full amount of the victim's losses" includes "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." (*Id.* at 2628 (quoting 18 U.S.C. § 2259(b)(1), (c)(2))). The court noted that there was "no dispute as to Dr. Watkins's estimate of the victim's total losses, as relates to her need for current and future mental health treatment," but only about "how much of these losses are attributable to [Booher]." (*Id.* at 2629). After finding that $524,655.00 was a "reasonable and conservative estimate" of

K.V.'s losses, the court considered Booher's relative culpability for K.V.'s losses and determined that Booher was "responsible for at least half of [K.V.]'s total losses as it relates to her current and future need for mental health treatment." (*Id.* at 2629, 2635).

On January 19, 2023 the court entered its restitution order. Booher timely appealed.

## II.

We review the propriety of a restitution order de novo and the amount of restitution awarded for an abuse of discretion. *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013). "Because federal courts have no inherent power to award restitution, restitution orders are proper only when and to the extent authorized by statute." *Id.* (internal quotation marks omitted) (quoting *United States v. Evers*, 669 F.3d 645, 655–56 (6th Cir. 2012)). We will reverse a restitution award for abuse of discretion only when we are left with a "definite and firm conviction that the [district] court committed a clear error of judgment." *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011) (quoting *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008)). The "district court's discretion is ample" in this area, but it must provide an explanation as to its restitution order. *See United States v. Mobasseri*, 828 F. App'x 278, 280 (6th Cir. 2020); *see also United States v. Jones*, 747 F. App'x 348, 359 (6th Cir. 2018).

## III.

*Restitution Amount.* On appeal, Booher maintains that the district court abused its discretion by relying "on clearly erroneous findings of fact" when it assessed restitution in the amount of $262,327.50. (ECF 12, Appellant's Br. 13). Booher's central claim is that, given the multiple contributing factors to K.V.'s trauma, the court erred in finding him responsible for half of her overall loss. We disagree.

As an initial matter, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, "requires a defendant to pay restitution to identifiable victims who have suffered either physical injuries or pecuniary losses as a result of certain criminal offenses." *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000) (citing 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)). Restitution is mandatory when a defendant is convicted of an offense involving child pornography. *See* 18 U.S.C. § 2259(a). That is, a court must order restitution in "the full amount of the victim's losses." *Id.* § 2259(b)(1). And the "full amount of the victim's losses" incudes:

> any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim . . . including--
> (A) medical services for relating to physical, psychiatric, or psychological care;
> (B) physical or and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) reasonable attorneys' fees, . . . ;
> (F) and any other relevant losses incurred by the victim.

*Id.* § 2259(c)(2). In almost identical language, 18 U.S.C. §§ 1593(b)(1) and 2429(b)(1) also require the court to order restitution in the "full amount of the victim's losses" for offenses involving sex trafficking or enticement of a minor, respectively. Both §§ 1593 and 2429 define "full amount of the victim's losses" by cross-reference to the definition in § 2259(c)(2). 18 U.S.C. §§ 1593(b)(3), 2429(b)(3).

Where the losses to be recompensed arise from trauma(s) with multiple contributors, determining restitution to be paid by an individual contributor can be challenging. Importantly, the sentencing court is merely required to "do [its] best" in making its proximate cause determination, exercising "discretion and sound judgment." *Paroline v. United States*, 572 U.S. 434, 459, 462 (2014). In *Paroline*, the Supreme Court explained that "the central concern of the causal inquiry must be the conduct of the particular defendant from whom restitution is sought."

*Id.* at 445. Restitution therefore is proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 448. "[A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458. The Court further discussed a variety of factors sentencing courts might consider in determining an appropriate restitution award. These factors include:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved . . . ; whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. Notably, the Court cautioned that these factors should "not be converted into a rigid formula," but instead should "serve as rough guideposts for determining an amount that fits the offense." *Id.*

Here, the record reflects that the district court used its broad discretion and sound judgment to determine the amount of restitution it awarded to K.V. To start, the court heard testimony from Dr. Watkins, a clinical psychologist, concerning his independent evaluation of K.V. to determine her future need for therapeutic treatment. Courts have deemed such testimony useful for this purpose in the past. *See, e.g.*, *United States v. Palmer*, 643 F.3d 1060, 1067–68 (8th Cir. 2011) (affirming a district court's award of $200,000 in restitution for sex trafficking of a child after finding that an expert's testimony was a reasonable estimate rather than speculative as to child's future costs of psychological treatment). Dr. Watkins opined that K.V. "experienced a number of traumatic experiences . . . at a developmentally-sensitive period" and used opioids, and that "[t]hese factors all working together created a lot of damage to psychological functioning and

social interactions." (R. 108, PageID 1813). Accordingly, Dr. Watkins advised that this "complex trauma" would require "lifelong treatment with . . . a multitude of different professions intervening." (*Id.*).

Dr. Watkins also testified that because K.V. was in therapy for trauma inflicted by another abuser while she was being victimized by Booher, Booher's conduct likely multiplied the distress of reliving the prior trauma. He explained that K.V.'s trauma was compounded by her parents' emotional unavailability. True, Dr. Watkins explained that he could not say one way or another whether K.V.'s trauma was exclusively due to Booher's actions—because "with trauma and with the way psychology works . . . [y]ou can't really take things apart and say that this thing caused this or that thing is responsible for that." (*Id.* at 1838–39). But Dr. Watkins was skeptical that anyone having experienced what K.V. had experienced would need less treatment than his estimate.

Dr. Watkins also provided detailed testimony describing the type, length, and cost of treatment that K.V. would need to deal with the trauma and substance abuse issues she has experienced. The court further heard K.V.'s victim statement, where she detailed how the abuse she suffered at the hands of Booher has significantly impacted her life. K.V.'s statement explained that her childhood was taken from her and that despite going through four years of trauma therapy, "there [was] so much more [she] need[s] to do." (*Id.* at 1847).

Taken together, this evidence provided ample support for K.V.'s total trauma-related losses. And as noted by the district court, Booher did not argue below and makes only a conclusory assertion on appeal that Dr. Watkins incorrectly estimated the overall amount of treatment that K.V. will need for a successful recovery or even the cost of that treatment. *See Tillman Transp., LLC v. MI Bus. Inc.*, 95 F.4th 1057, 1064 (6th Cir. 2024) ("[I]t is a settled appellate rule that issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).  Instead, he challenges the district court's assessment of fifty percent of the cost, or $262,327.50, to him for restitution.

*Apportionment of Restitution.*  Booher argues that the district court failed to "evaluate K.V.'s need for therapy because of the influence of other traumatic stressors or quantify their impact on the financial costs of the restitution requested by the [g]overnment."  (ECF 12, Appellant's Br. 12).  The gist of his argument is that the evidence was insufficient to show that Booher proximately caused $262,327.50 in losses to K.V.  But this argument fails.  Here, the district court carefully considered the relevant factors outlined in *Paroline* that are helpful for determining causation and ferreting out the relative harm caused by an offender.  As it regards Booher, these include the attempted production of child pornography images and the number of past criminal defendants or other abusers found to have contributed to K.V.'s general losses and overall sex-abuse related trauma.[2]  And because Booher's conduct, unlike the defendant's conduct in *Paroline* which involved only a child-pornography offense, included "varied sex-based offenses against" K.V., the district court considered Booher's activities surrounding and including his physical sexual abuse of K.V.  (R. 119, PageID 2631).

By examining all of Booher's criminal behavior, the court appropriately assessed the restitution attributable to Booher.  With respect to the production of child pornography images, Booher asked K.V. to send pornographic images of herself and supplied her with electronic devices to do so.  Even though Booher never produced pornographic images of K.V., his solicitation of

---

[2] Although it is not clear from the record whether each of K.V.'s other abusers faced criminal charges for their conduct, Booher does not challenge the district court's application of this *Paroline* factor and appears to have suggested it in his brief opposing restitution.  In any event, consideration of other uncharged abusers is permitted.  *See Paroline*, 572 U.S. at 460 (allowing district courts to consider "other facts relevant to the defendant's relative causal role").

pornographic images from K.V.—particularly in the midst of his ongoing sexual exploitation of her—still caused harm to K.V. And Booher alone caused this type of harm, as the record reveals no other individual who was accused of similar behavior.

In considering the number of past defendants and other abusers who potentially contributed to K.V.'s overall sex-abuse related trauma, the court found that four individuals, including Booher, had potentially contributed to K.V.'s overall trauma. The court then compared Booher's role to that of the other three individuals to approximate culpability. First, Akin: she introduced K.V. to Booher, suggested that she provide sexual favors, collected money from Booher after some of K.V.'s sexual acts, and provided K.V. with drugs. Yet, Akin did not herself carry out any physical sexual abuse against K.V. or repeatedly solicit sexual favors or pornographic images from K.V. like Booher. Moreover, despite Akin's own troubling conduct, if Booher had not sexually abused K.V., then Akin's introduction would not have resulted in any additional sexually related trauma to her. The district court therefore reasonably concluded that Akin's involvement in K.V.'s trauma did not warrant any reduction in Booher's relative culpability.

Next is a male foster parent who sexually abused K.V. after Booher's arrest. The record is somewhat sparse in this regard. For instance, it is unclear exactly how long the abuse lasted; it apparently stopped when K.V. threatened to report it. This abuser directly contributed to K.V.'s sexual trauma, but based on the record, the abuse appeared to be more limited as compared to the abuse K.V. suffered by Booher. In any event, Booher points to nothing in the record suggesting that the foster parent's abuse should have reduced Booher's relative culpability beyond the 50-percent reduction that the district court imposed.

Finally, the court considered K.V.'s first abuser. The abuse meted out by this individual was the most comparable to that inflicted by Booher because it occurred over the course of about

one year (starting when she was 13 years old as compared to Booher who began abusing K.V. when she was 14), and this abuser supplied K.V. with the pain medication that led to her drug addiction. Even with these similarities, however, several factors distinguish Booher's abuse of K.V. as more detrimental than that of her first abuser. First, K.V. was already in therapy for the trauma she experienced from the first abuser when Booher began his criminal conduct. And this new abuse, according to Dr. Watkins, likely multiplied K.V.'s distress. Next, as the district court noted, Booher emotionally manipulated K.V. by telling her that he wanted to marry her even though he was already married and had children. Notably, his manipulation did not end there, as he also presented her with a "promise" ring. At the same time, Booher fulfilled a quasi-nurturer role for K.V.—providing her with food, a phone, and a computer when her parents could not afford the latter. These actions facilitated his overall exploitation of her. Indeed, Booher communicated his illicit intentions and solicited pornographic images from K.V. over the very electronic devices that he supplied. He also instructed K.V. how to use Heywire to send such photographs.

In the end, the court found that Booher was "responsible for at least half of [K.V.]'s total losses as it relates to her current and future need for mental health treatment." (*Id.* at 2635). Accordingly, the court reduced Dr. Watkins's "conservative estimate"[3] by half and ordered Booher to pay $262,327.50 in restitution to K.V. We have no definite and firm conviction that the district court erred in reaching this conclusion.

Booher, nonetheless, urges a different result. He argues that other substantial sources of trauma, such as K.V.'s opioid addiction and lack of parental support, likely contributed to her need for long-term therapeutic treatment and should have been quantified to reduce his apportionment.

---

[3] As the government points out, Dr. Watkins's estimate did not attempt to quantify, for example, K.V.'s future lost income due to her trauma. *See* 18 U.S.C. § 2259(c)(2).

But as discussed, the district court carefully reviewed Booher's contribution to K.V.'s loss in comparison to the contribution of other abusers. Moreover, the district court considered K.V.'s non-sex-abuse-related trauma, including the emotional unavailability of K.V.'s parents. The district court also reasonably rejected Booher's argument that he "did not actually supply pills or drugs to teenagers," R. 108, PageID 1873, finding instead that Booher took advantage of K.V.'s addiction by providing her with drugs. This factual finding was not clearly erroneous in view of K.V.'s testimony that Booher bought pills for her at least three times. Booher points us to no particular factual finding that was erroneous and only broadly claims that the court's apportionment was not supported. Yet, the record does not bear out Booher's claim.

Based on the foregoing, we find that the district court did not abuse its discretion.

**IV.**

For the reasons discussed, we affirm the judgment of the district court.